Mr. Sadowski, when you're ready. May it please the court, Jeff Sadowski, Howard and Howard from Oak Hill Hills, Michigan. This is a patent case. It was ruled upon by summary judgment and there was a form of claim construction as part of the case. As points of reference here, I don't want to- You don't contest that there's anything in the specification other than rotational movement that is associated with the mechanism, right? That's correct. As other cases that we cited in the brief, like Liable Floor Shime and others, where there was nothing in the specification, for example, other than the pressure jacket. But this court found that there was a methodology of claiming and the Greenberg case was another example of that. There is a methodology of claiming where you don't have to claim every element of the specification and the claims can be effectuated as broader claims. So your argument is this is not a 12-piece means plus function. If we construed the claim term broadly, the claim term mechanism, it ought to cover non-rotational mechanisms even though the specification only deals with rotational mechanisms? Well, with respect to the 478 patent claim one, that would cover a rotational mechanism. With respect to the 254 claim one, the second patent, that would not cover- that would not require a rotational mechanism. And the words indicate what it does require. It requires something that moves in response to rectilinear movement, the movement of the fingers outwardly in response to rectilinear movement, which is supported in the specification. My primary argument is that mechanism 68 is a defined term in the specification. The mechanism- in the specification, there is a- Is it in the- looking at the 254 claim is the one you want to primarily rely on, right? That's correct. And what is it in there that indicates that the mechanism is being defined in anything other than functional terms? Well- Read it. It's a mechanism for moving said finger along a straight line in and out. That sounds pretty functional. How do we get a non-functional reading out of that? Because the term mechanism is defined in the specification. It's given a number. Mechanism 68 is defined in the specification. But mechanism 68 in the specification rotates. Mechanism 68 has several different functions, yes. Show us the language you think defines it in terms that are not functional. Well, first of all- And not necessarily rotational, too, as Judge Crouse points out. Right. Where would we find that? That would be parsing the section from- I think it's column- Five and six? Yeah, column five and six, where it starts. The mechanism 68, and it goes all the way down to- It's at the bottom of page five, column five, right? Right. I'm not looking at the patent right now. I'm looking at the opinion. But it's at page 27 of the opinion. Ph.D. quotes- Looking at that, it says just exactly what Judge Crouse points out. And mechanism 68, described in detail below, rotates. And then, as I have highlighted on my copy of the patent, rotation appears dozens of times throughout that column and nothing else. Yes, and in libel-florsheim, the description in the patent repeatedly said that it needed a pressure jacket. But the court, and the other cases that I cite related to libel-florsheim, says repeatedly that it had requirements of a pressure jacket. Yet, the claim as written didn't require a pressure jacket. Then you went into other issues in libel-florsheim too, and we don't have those issues in our case. How do you deal with the MIT versus Abacus case, where we say that mechanisms standing alone can be the same as means? It arrives to the presumption of 112.6 treatment. Right. These claims were written right after the Greenberg case came out in 2005. MIT came out later. MIT did not define the term at issue anywhere in the specification. It was a term that they took completely out of the blue, and that term was equated to a generic term, a means type of term. But in this case, and as in the Greenberg case, in the Greenberg case, the term means was defined. The term mechanism was defined, and the court in Greenberg said that means and mechanism, you're supposed to look at means and mechanism as you would any other defined term and not read those elements of the specification into the claims. What I'm missing in your answer, what I'm missing is even accepting what you're right, you say this case is different because mechanism is defined in the spec. But as Judge Rader pointed out, the definition that you point to for mechanism in the spec requires rotation. So you're not saying we ought to adopt, you're saying the spec defines mechanism, but we shouldn't be limited by that definition. That's what I'm hearing or understanding your argument. So tell me if I'm wrong. That is correct. And in Libel-Forsheim, that defined it in exactly the way that I'm defining it. In Libel-Forsheim, you have an injector with a pressure jacket. They only described an injector with a pressure jacket. They didn't identify other alternatives, but the claims didn't include the pressure jacket, and so you don't read into the claims the pressure jacket. So what is the definition of mechanism? The definition of mechanism includes a central post that works linearly and rotationally to move these fingers out. The mechanism has a linear movement to move the fingers out, and it has a rotational movement. And is there anything in the specification to support that portion of the definition dealing with linear rotation? Yes. It talks about you would have to parse those relevant portions of the support to support the one function versus the other. And I believe I did that in my brief. At page 15 of my brief, I cite column 5 lines 44 to 46, and then column 6 lines 3 to 10 of the 254 patent, and then column 6 lines 20 to 25 of the 254 patent, and column 7 lines 43, 44 of the 254 patent. So you would go column 5 lines 44 to 46. The figures are movably radial into and out of the locating pin through the perforation of 67 transversely to the axis of the locating pin. That's the first part of that particular element. You say this claim was drafted after Greenberg. That's correct. Why didn't you follow that methodology and use the term finger displacement mechanism as Greenberg used detent mechanism? If you'd done that, perhaps it would have been something other than the problem of substituting mechanism for means and using only functional definitions, wouldn't it? Then you could argue, look, it's a structure we're talking about. It's a finger displacement mechanism. I didn't write the claims. I understand that. But you've got to defend their choice of words. But I think that there's a clear intent shown in here, particularly when you put it in the perspective of Greenberg. MIT is the one that parsed, you know. Mechanism standing alone is the same as means. Right. Greenberg said not when you put detent in front of it, because then it becomes a specific apparatus, a kind of mechanism. And you could have done the same thing, finger displacement mechanism, and you'd have at least a stronger argument. I'm not sure if you'd win, but you'd have a stronger argument. We could have done a lot of things with this claim in retrospect. That's a fair comment. It's always easy in hindsight. It's always easier in hindsight. But the claim that we're dealing with clearly shows an intent of the drafter that the one claim was to be limited to a rotational claim and the other claim was to eliminate the rotation from the claim. So from that perspective, it's very similar to Greenberg's intent. Greenberg defined means. Greenberg defined detent mechanism. The court focused on detent mechanism. But there was support in the specification, and even the opinion states that they relied on the fact that, let's see, this is page 1581 where the detent mechanism described in the 501 patent specification consists of blah, blah, blah, and it was defined in the specification. My reading of the claim is that's what turned this and turned it into an Alturas kind of case or any other case where you're not supposed to read elements of the specification of the claims. You're supposed to read what the words of the claims are. Should we hear from Mr. Brown and save the rest of your rebuttal time? Certainly. OK. Thank you, Mr. Sadowski.  Thank you, Your Honor. May it please the court. Summary judgment of non-infringement should be affirmed because the district court got it right. It correctly construed the mechanism for moving as a means plus function limitation and correctly concluded- Didn't use the term means. It did not, Your Honor. As was the case or as was discussed in the MIT decision, mechanism and means are virtually interchangeable. But this falls, as we've discussed just recently with Mr. Sadowski, between MIT and Greenberg. It may not have used finger displacement mechanism to identify an apparatus, but it did define what this mechanism was doing. In Column 5, it talks about fingers going in and out. Why can't we see that definition as sufficient to take this out of the means category? Well, we look first to the language of the claim itself. And is there language in the claim that would denote structure? There's a complete absence of language in the claim that would suggest there's sufficient structure at that point. I think, quite frankly, that Welker is between a rock and a hard place here because- By the way, how do you get past the end structural equivalence thereof? Was that dealt with sufficiently? There was an absence of evidence on the part of Welker's position with respect to that issue, Your Honor. We produced evidence from our expert witness, Dr. Novak, who detailed the differences between the structures, and that evidence was unrefuted. And we didn't bear the burden of proof on that issue, but we came forward and introduced affirmative evidence establishing the lack of structural equivalence, and the district court rightfully concluded that summary judgment was appropriate. With respect to this argument that somehow the claim- there's enough structure in the claim to get it out of means plus function, I think that the analysis and the questioning was dead on, that when you look to the specification, it is a rotating mechanism. That if they truly want to rely upon a specific definition of the term mechanism, which we all know sitting here today does not suggest any structure whatsoever, but if they say, well, but we specifically defined it, then they need to be held to their specific definition, and that specific definition was a rotating mechanism that included the central post, the dowels, the cam and cam- Well, the other side's answer to that, at least in part, seems to be under libel-floor-shine. We should extend the definition beyond the rotating mechanism in the spec. But here, the argument is that it's only because we specifically define mechanism in the spec that gets us out of 112 paragraph 6. I don't recall that being the specific issue in libel-floor-shine. And so if you truly are saying, look here very carefully, we define mechanism 68, we provide a notice to the public at large, that's what it means. They can't parse, which is what Mr. Sadowski said twice that he was doing to come up with a definition that didn't include rotating. He was parsing words. So that's where you have the rock and the hard place. Exactly right, Shrouder. I would add that both on the issue of claim construction and ultimately on the issue of infringement as well, that the applicants here actually touted the rotating feature itself as providing the advantages of the invention in the summary of the invention section. If the district court properly construed this as 112 paragraph 6, then it is game, set, match with respect to the 254 patent because Welker has not come forward with any argument whatsoever with respect to the second prong of the infringement analysis, that there is infringement of that limitation as construed by the court. Their arguments were all premised upon the words rotational being excised out of it. So in our view, once the district court's decision is properly affirmed, the infringement question on claim construction, the infringement question follows just as easily based upon the absence of evidence. What wasn't raised by Mr. Stavsky yet, I could spend time dealing with the 478 patent and the allegations of commercial conduct that might give rise to an infringement finding. I would just suggest to you on that point, this is the earlier patent and the evidence of record before the district court was that Ph.D.'s commercial activity with respect to its prototype design all ended prior to issuance of the 478 patent. There can't be any infringement of the 478 patent with respect to that prototype because all of the conduct, the development of the prototype, the providing the prototype to General Motors, all occurred prior to issuance of the patent itself and that any commercial conduct ceased before the patent itself issued. And your position must be, because we're on summary judgment, that there was not any factual dispute even with inferences to defeat somebody. None whatsoever, Your Honor. There was essentially unrefuted evidence in the form of the affidavit of Mr. Davenport that all commercial activity ceased. What Mr. Sadowski and Welker suggested in their reply brief was that, well, there's some question here with respect to when a prototype was provided to General Motors on the second occasion. Mr. Davenport suggested it was August 28 of 2004, which happened to be the date of his wife's birthday. They suggest that, well, they didn't know about it, so it must have been sometime in October. Well, we've got clear testimony from Mr. Davenport, and in any event, what the record makes clear is that at the time that second prototype was provided to General Motors or when General Motors asked for it, it's because Welker asked them to go get a copy of it so they could evaluate it. So even if you could look at this and say there's evidence in the record that Ph.D. provided a prototype to GM after September 7, and I would suggest you can't reach that conclusion, but if you did, it was at the request of Welker, so Welker could evaluate it. So in our view with respect to the 478 patent, no evidence, no inference to be drawn with respect to a make, use, sell, or offer for sale, and I would say that the admissions of counsel at the summer judgment hearing are binding upon Welker in that regard. And for that reason, with respect to the 478 patent, we ask that the decision below be affirmed. And with respect to the 254 patent, quite frankly, it doesn't matter which claim interpretation you would suggest is the appropriate one based upon our discussion earlier. Rotational is a key part of that patent. It's a key part of the specification, and no matter how you slice it, it's a part of that claim in our view, in which case there can be no infringement. So unless there are any other questions from Your Honor, we would... Thank you, Mr. Brown. Thank you. Mr. Sadowski has a little over four minutes remaining. Four minutes. It's intriguing that this case is a case where we have a defendant that files a patent application on our product a year and a half after we do, after they see our product. Their 30B6 witness knows exactly what the claim language says and reads the claim language right on their product, and yet here we're talking about losing a case on summary judgment motions relative to what I contend is a strained reading of the claim language. I mean, the claim language, particularly in light of cases like libel-floor-shine, clearly indicates that it can be broader than the defined term in the specification. Why not? That's the way claims are drafted. You're correct. If there was one additional adjective thrown into mechanism prior to the word mechanism, this would be a much easier case, but I'm saying that this case is right on the facts of Greenberg other than that one adjective. Is that one adjective that important? The term itself, anybody that reads the patent, the 30B6 witness was a patentee, he read the patent, he read the definition, and he read the claim. He read one set of claim language, he read rotation, and the other set of claim language he didn't. If you read rotation into the second claim, you have multiple claims with exactly the same scope. You have no claim differentiation. You have at least five claims with the same identical scope. The Patent Office clearly doesn't, the Patent Office clearly has rules that distinguish the claim scope, and the bottom line is that it's a defined claim on the one hand, relative to the defined term in the specification, libel-floor-shine. On the other hand, the court lobbying in rotation into the second claim purely because it had its claim construction on page 27 included everything in the defined term as part of the word mechanism. So on the one hand it's a generic term, on the other hand it's a defined term. The court is going around and around on that. And then with regard to, you know, subsequently on page 36 of the opinion, it lobs in rotation in response to rectilinear movement, saying it has to include that. There's no rational basis for including it at that point. With regard to the other patent, the parts of the evidence that we presented in our brief were the parts of the evidence that the district court ignored. The district court did not mention the fact that the prototype was issued on or after August 28, 2004. The patent issued September 7, 2004. The Ph.D. met with General Motors on a regular basis, had continued activities from August, September, October, November, to the point where November they met with us and asked us for a license because they were continuing to offer this product for sale. The prototype may or may not have occurred before the issue date of the patent, but nobody ever removed the prototype from the facility. Nobody ever told GM that this prototype wasn't continued to be offered for sale. And it set the basis for the pricing. It set the basis for all of the activity between the parties. And it caused our pricing to be $300 or $400 a unit less than it would have otherwise. We were at $1,100 and they were at $700. But I believe that this case is appropriately reversible and it should be remanded for further findings. Thank you. Thank you, Mr. Sadowski.